**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**CINCINNATI DIVISION**

**LAVITA L. BOARD**
911 Purcell Avenue
Cincinnati, OH 45205

                Plaintiff,

     v.

**UNION SAVINGS BANK**
c/o Charles W. Thornton
8534 East Kemper Road
Cincinnati, OH 45249

              Defendant.

Civil Case No.

**COMPLAINT FOR DAMAGES**

**JURY DEMAND ENDORSED HEREON**

Plaintiff Lavita L. Board, through counsel, states as follows for her *Complaint for Damages* against Defendant Union Savings Bank (the "Complaint"):

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Lavita L. Board ("Plaintiff" or "Board"), is the owner of real property and improvements thereupon located at and commonly known as 911 Purcell Avenue, Cincinnati, OH 45205 (the "Home").

2. Plaintiff currently maintains the Home as her primary, principal residence, and have so maintained the Home for all times relevant to the allegations of this Complaint.

3. Defendant Union Savings Bank ("Defendant" or "USB") is a federal depository institution incorporated under the laws of the State of Ohio, with its principal place of business located in Cincinnati, Ohio.

4. USB is the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") executed by Plaintiff (collectively referred to hereinafter as the "Loan").

5.     Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

6.     This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

7.     Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action and the borrower's principal, primary residence, is located within this District.

## SUMMARY OF RESPA AND RMLA CLAIMS

8.     This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X") and 12 C.F.R. § 1026.1, *et seq.* ("Regulation Z")

9.     In January 2013, the CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

11.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for

purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

12.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

13.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

14.     USB is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers" as defined in 12 C.F.R. § 1026.41(e)(4).

15.     USB is not a "qualified lender" as defined in 12 C.F.R. § 617.700.

16.     Plaintiff asserts a claim for relief against USB for violations of the specific rules under RESPA and Regulation X, as set forth, *infra.*

17.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, *to respond to borrowers regarding mortgage loan problems*, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans." 78 Fed. Reg. 10696, 10739 (emphasis added).

18.     TILA provides that a creditor or servicer of a home loan shall provide an *accurate* payoff balance within a reasonable period, but within seven (7) business days regardless of circumstances, upon receipt of a written request from a borrower for the same. 15 U.S.C. § 1639g.

19.     Through Regulation Z, the CFPB has provided guidance for the interpretation of certain TILA provisions, including servicers' duties related to responding to requests for a payoff balance.

20.     Regarding payoff statements, Regulation Z provides that:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date. The statement shall be sent within a reasonable time, but in no case more than seven business days, after receiving a written request from the consumer or any person acting on behalf of the consumer. When a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure, because the loan is a reverse mortgage or shared appreciation mortgage, or because of natural disasters or other similar circumstances, the payoff statement must be provided within a reasonable time.

12 C.F.R. § 1026.36(c)(3).

21.     The Loan is a closed-end consumer credit transaction secured by the Home as contemplated by TILA and Regulation Z. 15 U.S.C. § 1602; 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(b).

22.     USB is the creditor of the Loan as defined and contemplated by TILA and Regulation Z.

23.     Board asserts claims for relief against USB for violations of the specific rules under Regulation Z, as set forth, *infra*.

24.     Board has a private right action under TILA pursuant to 15 U.S.C. § 1641(e) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## FACTUAL BACKGROUND

25.     On or about June 18, 2015, Board filed for bankruptcy protection under Chapter 13, Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Ohio in the matter captioned *In re Lavita L. Board*, assigned case number 1:15-bk-12387 (the "Bankruptcy").

26.     On or about March 23, 2020, the Bankruptcy trustee filed a notice of final cure payment concerning the Loan and indicated that the Loan was current and due and owing for the payment due and owing for April 1, 2020.

27.     USB did not object to the notice of final cure in the Bankruptcy and Board received a discharge from the Bankruptcy on April 15, 2020.

28.     Despite the notice of final cure and the Bankruptcy discharge, USB continued to send periodic billing statements to Board claiming that she was past due on the Loan in the amount of $1,293.46, an amount in excess of the amount necessary to constitute two (2) periodic payments on the Loan.

29.     On or about May 19, 2020, Board, through counsel, sent a notice of error captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E); notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a notice of error in violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E)" ("NOE #1/RFI #1") to USB at the address USB designated for the receipt of notices of error and requests for

information pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(b), respectively (the "Designated Address") via Certified Mail [Tracking No. 70151520000166359155]. *See*, a copy of NOE #1/RFI #1, without enclosures, with tracking information from the website for the USPS (www.usps.com), attached as **Exhibit 1**.

30.     Through NOE #1/RFI #1, Board alleged that USB committed multiple errors related to the Loan by:

     a.  Failing to properly calculate the escrow balance for the Loan and increasing the monthly escrow payment from $234.28 to $302.06, an error pursuant to 12 C.F.R. §§ 1024.35(b)(4) and/or (11); and,

     b.  Failing to properly apply accepted payments subsequent to and in accordance with a notice of final cure in the Bankruptcy, constituting errors pursuant to 12 C.F.R. §§ 1024.35(b)(2) and/or (11).

*See*, Exhibit 1.

31.     Through NOE #1/RFI #1, Board requested that USB provide a transaction history of the loan from July 1, 2015 through May 19, 2020 and a current payoff statement for the Loan. *See*, Exhibit 1.

32.     USB received NOE #1/RFI #1 at the Designated Address on May 23, 2020. *See*, Exhibit 1.

33.     On or about June 8, 2020, Board, through counsel, sent two (2) separate requests for information (the "RFIs") via Certified Mail to USB at the Designated Address, specifically:

     a.  A request for information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2), notably the identity and contact information for the owner or investor of the Loan [Tracking No. 70142120000306728393] ("RFI #2"); and,

b. A request for information pursuant to 12 C.F.R. § 1024.36 requesting information and/or documents related to the Loan, including, a life of loan transaction history, servicing notes, any broker's price opinions, the physical location of the original note, a copy of the original note, USB's two most recent escrow analyses, a reinstatement quote, and information related to loss mitigation [Tracking No. 70142120000306728386] ("RFI #3");

*See*, a copy of RFI #2 with tracking information from the website for the United States Postal Service (USPS) (www.usps.com), attached as **Exhibit 2**; *see also*, a copy of RFI #3 with tracking information from the website for the USPS (www.usps.com), attached as **Exhibit 3**.

34. USB received RFI #2 and RFI #3 at the Designated Address on June 11, 2020. *See*, Exhibits 2 and 3.

35. On or about June 29, 2020, Molly Smith, identified as a "Foreclosure/Bankruptcy/REO Manager" with USB ("Ms. Smith") sent an email stating "[p]lease see the attached payment history and payoff statements [*sic*] in response to your request" and containing the following attachments in response to NOE #1/RFI #1:

a. A transaction history for the Loan; and,

b. A payoff statement for the Loan good through "6/30/2020".

*See*, a copy of said email correspondence without attachments ("Response #1"), attached as **Exhibit 4**.

36. USB did not send any further correspondence concerning NOE #1/RFI #1 prior to sending Response #1.

37. USB did not address any of the errors alleged through NOE #1/RFI #1 through Response #1. *See*, Exhibit 4.

38.    On or about June 29, 2020, Ms. Smith further sent correspondence via email acknowledging receipt of RFI #2 and RFI #3.

39.    On or about July 21, 2020, having not received a proper response to the request contained in RFI #2 seeking the identity and contact information for the owner or investor of the Loan, Board, through counsel, sent a notice of error captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request for information as required by 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(D)" via Certified Mail [Tracking No. 70151520000166365477] to USB at the Designated Address alleging that such failure was in error ("NOE #2"). *See*, a copy of NOE #2 with tracking information from the website for the United States Postal Service (USPS) (www.usps.com), attached as **Exhibit 5**.

40.    USB received NOE #2 at the Designated Address on July 28, 2020. *See*, Exhibit 5.

41.    To date, Board has not received any correspondence from USB acknowledging or in response to NOE #2.

42.    On or about August 4, 2020, Ms. Smith sent a secured message via email in response to RFI #2 and RFI #3 containing various responsive documents ("Response #2").

43.    Ms. Smith did not include any explanatory correspondence or cover letter along with Response #2.

44.    Through Response #2, USB failed to provide information Board requested through RFI #3, specifically:

     a.  Servicing notes for the Loan;

     b.  Broker's price opinions of the Home obtained in relation to the Loan;

     c.  An accurate copy of the Note; and,

    d. Information and documentation related to loss mitigation in relation to the Loan.

45. On or about August 20, 2020, Board, through counsel, sent a notice of error captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E); notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a notice of error in violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E)" via Certified Mail [Tracking No. 70151520000166359322] to USB at the Designated Address ("NOE #3"). *See*, a copy of NOE #3 with tracking information from the website for the United States Postal Service (USPS) (www.usps.com), attached as **Exhibit 6**.

46. Through NOE #3, Board alleged that USB committed multiple errors related to the Loan by:

    a. Failing to properly respond to RFI #3, as further described *supra*; and,

    b. Failing to respond to any of the errors as alleged through NOE #1/RFI #1.

*See*, Exhibit 6.

47. USB received NOE #3 at the Designated Address on September 1, 2020. *See*, Exhibit 6

48. Ms. Smith sent email correspondence to counsel for Board on September 10, 2020 acknowledging receipt of NOE #3 and requesting "what documentation is still outstanding" despite NOE #3 clearly indicating the same.

49. Ms. Smith then requested an extension of time until October 25, 2020 to respond to NOE #3 due to having additional responsibilities "related to COVID-19 forbearances and loss mitigation options".

50. Ms. Smith sent email correspondence dated October 21, 2020 with attachments in response to NOE #3 ("Response #3").

51. USB, through Response #3, provided the documentation that Board indicated USB failed to previously provide in response to RFI #3 as alleged through NOE #3.

52. USB, through Response #3, however, failed to provide any response to the errors alleged through NOE #1/RFI #1 as alleged again through NOE #3.

53. To date, USB has not addressed the errors originally alleged through NOE #1/RFI #1.

54. USB now claims that Board is current on the Loan which means that USB may have corrected the errors related to the application of payments, but USB has not indicated whether such an error occurred and why not, or alternatively, when such errors were corrected.

## DAMAGES AND IMPACT UPON PLAINTIFF

55. Due to USB's failure to properly respond to the various requests for information and notices of error concerning the Loan, Board is left in a state of uncertainty and doubt as to whether the amounts claimed due and owing are, in fact, rightfully due and owing on the Loan.

56. Moreover, Board calculated that her monthly escrow payments for the Loan should be $234.28 since being discharged from the Bankruptcy, but USB has continued to collect upwards of $302.06 for escrow each month for nearly one (1) year.

57. USB's improper actions caused Plaintiff to suffer from actual and proximate damages including:

    a. Legal fees and expenses to submit each of the notices of error to USB in a good faith attempt to amicably resolve this matter or to have USB mitigate the harm

caused to Plaintiff to which Plaintiff did not receive a timely, adequate, or proper response;

b. Legal fees and expenses to submit requests for information pursuant to 12 C.F.R. § 1024.36 to obtain information necessary to attempt to ascertain the origin of USB's erroneous actions and determine whether the errors had been corrected;

c. Improper fees and charges imposed on the Loan in the form of unnecessarily increased escrow costs for which Plaintiff is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled;

d. Unwarranted harm to Plaintiff's credit rating and a significant delay in the rehabilitation of her credit for which she has not received proper redress due to USB claiming Plaintiff was past due on the Loan following the notice of final cure and discharge in the Bankruptcy; and,

e. Severe emotional distress driven by by fear that USB's claim for unwarranted amounts and refusal to review errors alleged through the notices of error would be the start of a slippery slope leading to a potential default and foreclosure unless Plaintiff pay for amounts or fees which are not warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

**COUNT ONE:**
**VIOLATIONS OF 12 C.F.R. § 1024.35(d) AND 12 U.S.C. §§ 2605(e) AND (k)**

**(Failure to timely acknowledge NOE #1/RFI #1, NOE #2, and NOE #3)**

58.     Board repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

59.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

60.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

61.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

62.     "Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error." 12 C.F.R. § 1024.35(d), *see also*, 12 U.S.C. § 2605(e)(1).

63.     NOE #1/RFI #1, NOE #2, and NOE #3 (collectively, the "NOEs") each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 1, 5, and 6.

64.     Board sent each of the NOEs to USB at the Designated Address and USB received each such notice at such address. *See*, id.

65.     USB failed to provide any written acknowledgment of its receipt of NOE #1/RFI #1 or NOE #2. *See*, Exhibits 1 and 5.

66. USB received NOE #3 on or about September 1, 2020, and was required to send written acknowledgement of such receipt on or before September 9, 2020, but did not send such acknowledgement until September 10, 2020. *See*, Exhibit 6.

67. USB failed to timely acknowledge each of the NOEs as required by 12 C.F.R. § 1024.36(d) and/or 12 U.S.C. § 2605(e)(1) which constitute three (3) clear, distinct, and separate violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E), one (1) such violation for each of the NOEs USB failed to timely acknowledge in writing.

68. USB's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

69. USB's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

70. As a result of USB's actions, USB is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

71. Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO:**
**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)**

**(Failure to timely and properly respond to the NOE #1/RFI #1, NOE #2, and NOE #3)**

72. Board repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

73. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

74.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

75.     A servicer must respond to a notice of error by either:

    (A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

    (B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

76.     A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

    (A)   Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

    (B)   Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

    (C)   For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

77.     A servicer may request an extension by up to an additional fifteen (15) days (excluding legal public holidays, Saturdays, and Sundays), if they request such an extension prior

to the expiration of the thirty (30) day (excluding legal public holidays, Saturdays, and Sundays) deadline to respond. 12 C.F.R. § 1024.35(e)(3)(ii).

78.     "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

79.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

80.     Each of the NOEs constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibits 1, 5, and 6.

81.     Board sent each of the NOEs to USB at the Designated Address and USB received each such notice at such address. *See*, id.

82.     Through NOE #1/RFI #1, Board alleged that USB committed multiple errors related to the Loan by:

> a.  Failing to properly calculate the escrow balance for the Loan and increasing the monthly escrow payment from $234.28 to $302.06, an error pursuant to 12 C.F.R. §§ 1024.35(b)(4) and/or (11); and,
>
> b.  Failing to properly apply accepted payments subsequent to and in accordance with a notice of final cure in the Bankruptcy, constituting errors pursuant to 12 C.F.R. §§ 1024.35(b)(2) and/or (11).

*See*, Exhibit 1.

83.     USB received NOE #1/RFI #1 at the Designated Address on May 23, 2020. *See*, Exhibit 1.

84.     USB did not address any of the errors alleged through NOE #1/RFI #1 through Response #1 nor through any other correspondence. *See*, Exhibits 1 and 4.

85.     USB failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e) as to NOE #1/RFI #1 as USB has wholly failed to respond to the errors alleged through NOE #1/RFI #1.

86.     USB's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1/RFI #1 constitute a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Board has suffered actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending the NOE #3 which would not have been necessary but for USB's failure to properly respond to NOE #1/RFI #1.

87.     Through NOE #2, Board alleged that USB committed an error by failing to provide the identity and contact information for the owner or investor of the Loan in response to RFI #2. *See*, Exhibits 2 and 5.

88.     USB received NOE #2 at the Designated Address on July 28, 2020. *See*, Exhibit 5.

89.     To date, Board has not received any correspondence from USB acknowledging or in response to NOE #2.

90.     USB failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e) as to NOE #2 as USB has wholly failed to respond to the errors alleged through NOE #2.

91.     USB's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #2 constitute a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Board has suffered actual damages as detailed, *supra*.

92.     Through NOE #3, Board alleged that USB committed multiple errors related to the Loan by:

> a.  Failing to properly respond to RFI #3, as further described *supra*; and,

> b.  Failing to respond to any of the errors as alleged through NOE #1/RFI #1.

*See*, Exhibit 6.

93.     USB received NOE #3 at the Designated Address on September 1, 2020. *See*, Exhibit 6

94.     USB, through Ms. Smith, sent Response #3 in response to NOE #3.

95.     USB, through Response #3, provided the documentation that Board indicated USB failed to previously provide in response to RFI #3 as alleged through NOE #3, however, USB failed to provide any response to the errors alleged through NOE #1/RFI #1 as alleged again through NOE #3. *See*, Exhibits 1 and 4.

96.     USB failed to fulfill its obligations as to 12 C.F.R. § 1024.35(e) as to NOE #3 as USB has wholly failed to respond to the errors alleged through NOE #3 concerning USB's failure to address the errors alleged through NOE #1/RFI #1.

97.     USB's failure to perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #3 concerning USB's failure to address the errors alleged through NOE #1/RFI #1, constitute a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Board has suffered actual damages as detailed, *supra*.

98.     USB's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights and in abdication of USB's obligations under RESPA.

99.     USB's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

100.    As a result of USB's actions, USB is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

101.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE:
## VIOLATIONS OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)

### (Failure to timely and properly respond to RFI #2 and RFI #3)

102.    Board repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

103.    12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

104.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

105.    A servicer must respond to a request for information by:

    (i)    Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

    (ii)   Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis

> for the servicer's determination, and provides contact
> information, including a telephone number, for further
> assistance.

12 C.F.R. § 1024.36(d)(1).

106.   Furthermore, a servicer must properly respond to a request for information within

the following deadlines:

> A servicer must comply with the requirements of paragraph (d)(1)
> of this section:
> (A)   Not later than 10 days (excluding legal public holidays,
>       Saturdays, and Sundays) after the servicer receives an
>       information request for the identity of, and address or other
>       relevant contact information for, the owner or assignee of a
>       mortgage loan; and
> (B)   For all other requests for information, not later than 30 days
>       (excluding legal public holidays, Saturdays, and Sundays)
>       after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

107.   A servicer does not have to provide information requested through a request for

information "if the servicer *reasonably determines*" that the request seeks information that is

duplicative of a prior request, seeks confidential, proprietary or privileged information, is

overbroad or unduly burdensome[2], or is untimely, and advises the borrower of its determination

in writing. 12 C.F.R. § 1024.36(f) (emphasis added).

108.   "A servicer of a federally related mortgage shall not…fail to comply with any other

obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate

to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

---

[2] "To the extent a servicer can reasonably identify a valid information request in a submission that
is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of
paragraphs (c) and (d) of this section with respect to that requested information." 12 C.F.R. §
1024.36(f)(1)(iv).

109. RFI #2 and RFI #3 are each a request for information as defined by 12 C.F.R. § 1024.36(a) as they each contain Plaintiff's name, loan number, property address, and request information related to the Loan. *See*, <u>Exhibits 2 and 3</u>.

110. On or about June 8, 2020, Board, through counsel, sent RFI #2 and RFI #3 via Certified Mail to USB at the Designated Address. *See*, <u>Exhibits 2 and 3</u>.

111. USB received RFI #2 and RFI #3 at the Designated Address on June 11, 2020. *See*, <u>Exhibits 2 and 3</u>.

112. Through RFI #2, Board requested that USB provide the identity of and contact information for the owner or investor of the Loan. *See*, <u>Exhibit 2</u>.

113. USB was required to provide the identity of and contact information for the owner or investor of the Loan within ten (10) days of June 11, 2020—on or before June 25, 2020. *See*, <u>id</u>.; 12 C.F.R. § 1024.36(d)(2)(i)(A).

114. USB did not provide the identity of and contact information for the owner or investor of the Loan within ten (10) days of June 11, 2020 as required by 12 C.F.R. § 1024.36(d), nor has Plaintiff or her counsel received any such response.

115. USB's failure to provide a timely written response to RFI #2 constitutes a violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k) and has caused Plaintiff to suffer actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending the NOE #2 which would not have been necessary but for USB's failure to properly respond to RFI #2.

116. Through RFI #3, Board requested information and documents related to the Loan, including, a life of loan transaction history, servicing notes, any broker's price opinions, the

physical location of the original note, a copy of the original note, USB's two most recent escrow analyses, a reinstatement quote, and information related to loss mitigation.

117.    On or about August 4, 2020, Ms. Smith sent Response #2 in response to RFI #3 containing various responsive documents.

118.    Ms. Smith did not include any explanatory correspondence or cover letter along with Response #2.

119.    Through Response #2, USB failed to provide information Board requested through RFI #3 as required by 12 C.F.R. § 1024.36(d), specifically:

    a.    Servicing notes for the Loan;

    b.    Broker's price opinions of the Home obtained in relation to the Loan;

    c.    An accurate copy of the Note; and,

    d.    Information and documentation related to loss mitigation in relation to the Loan.

120.    Through Response #2, USB failed to provide any justification as to why it would not have to provide the missing information as would be expressly required by 12 C.F.R. § 1024.36(f).

121.    USB's failure to provide a proper and adequate written response to RFI #3 constitutes a violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k) and has caused Plaintiff to suffer actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending the NOE #3 which would not have been necessary but for USB's failure to properly respond to RFI #3.

122.    USB's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights and in abdication of USB's obligations under RESPA and Regulation X.

123.    USB's conduct as pleaded, *supra*, shows a conscious disregard for Plaintiff's rights and USB's obligations under RESPA and Regulation X.

124.    As a result of USB's actions, USB is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

125.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT FOUR:**
**VIOLATIONS OF 15 U.S.C. § 1639g AND 12 C.F.R. § 1026.36(c)(3)**
**(Failure to provide Payoff)**

126.    Board repeats and realleges paragraphs 1 through 57 with the same force and effect as though fully set forth herein.

127.    Board submitted a request for a payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) to USB through NOE #1/RFI #1 on May 19, 2020. *See*, Exhibit 1.

128.    USB received NOE #1/RFI #1 on May 23, 2020.

129.    USB was required to send an accurate payoff statement for the Loan within seven (7) business days of May 23, 2020—on or before June 8, 2020. 12 C.F.R. § 1026.36(c)(3); 15 U.S.C. § 1639g.

130.    USB did not provide a payoff statement for the Loan to Board on or before June 8, 2020.

131.    Board submitted another request for a payoff statement of the Loan pursuant to 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) to USB through RFI #2 on June 8, 2020.

132.    USB received RFI #2 on June 11, 2020.

133. USB was required to send an accurate payoff statement for the Loan within seven (7) business days of June 11, 2020—on or before June 22, 2020. 12 C.F.R. § 1026.36(c)(3); 15 U.S.C. § 1639g.

134. USB did not provide a payoff statement for the Loan to Board on or before June 22, 2020.

135. USB did not provide a payoff statement for the Loan to Board until sending Response #1 on or about June 29, 2020. *See*, Exhibit 4.

136. USB failed to provide accurate payoff statements in a timely manner on at least two (2) separate occasions as required by 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3.

137. As a result of USB's actions, Plaintiff suffered actual damages, as further described, *supra*.

138. USB is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. §§ 1640(a)(1)-(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Lavita L. Board prays that this Court grant judgment against Defendant Union Savings Bank, and award her the following:

A. Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Four.

B. An award of statutory damages of Two Thousand Dollars ($2,000.00) for each of the violations of RESPA contained in Counts One through Three, for a total of Sixteen Thousand Dollars ($16,000.00);

C. An award of statutory damages of Four Thousand Dollars ($4,000.00) for the violations of TILA and Regulation Z contained in Count Four;

D.    For attorneys' fees and costs as to Counts One through Four;

E.    For such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff Lavita L. Board*

## JURY DEMAND

Plaintiff Lavita L. Board hereby respectfully demands a trial by jury on all such claims that may be so tried.

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Dann Law

*Counsel for Plaintiff Lavita L. Board*