**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **LAVITA L. BOARD**, <br><br> Plaintiff, <br><br> v. <br><br> **UNION SAVINGS BANK**, <br><br> Defendant. | Case No. 1:21-cv-00149_TSB <br><br> Judge Timothy S. Black |

**PLAINTIFF LAVITA L. BOARD'S RESPONSE IN OPPOSITION TO DEFENDANT UNION SAVINGS BANK'S MOTION FOR SUMMARY JUDGMENT**

<br>

> **DANN LAW**
> Marc E. Dann (0039425)
> Brian D. Flick (0081605)
> Daniel M. Solar (0085632)
> Michael A. Smith Jr. (0097147)
> 15000 Madison Ave.
> Lakewood, OH 44107
> Telephone: (216) 373-0539
> Facsimile: (216) 373-0536
> notices@dannlaw.com
> *Counsel for Plaintiff Lavita L. Board*

# I. TABLE OF CONTENTS

I. TABLE OF CONTENTS ................................................................................................... i
II. INTRODUCTORY STATEMENT .................................................................................... 1
III. FACTUAL BACKGROUND ............................................................................................. 1
IV. LEGAL STANDARD ......................................................................................................... 4
V. ARGUMENT ....................................................................................................................... 5
    A. USB'S VIOLATIONS OF RESPA AND TILA ........................................................ 5
    B. USB'S VIOLATIONS OF RESPA AND TILA DIRECTLY AND
       PROXIMATELY CAUSED BOARD TO SUFFER ACTUAL DAMAGES .............. 6
       1. Board Has Standing Pursuant to Article III. ........................................................ 6
       2. USB's Violations of RESPA Have Resulted in Financial Harm to Board. ............ 8
          a. USB Demanded and Board Paid Money to USB that Was Not Owed
             by Board. .................................................................................................... 9
          b. USB's Constant Disregard of its RESPA Obligations Directly and
             Proximately Resulted in Board Incurring Attorneys' Fees and Costs. ............. 9
       3. USB's Violations of RESPA Have Resulted in Emotional Harm to Board. ........ 12
       4. Board Is Entitled to Statutory Damages for USB's Pattern or Practice of
          Noncompliance With RESPA ............................................................................ 13
VI. CONCLUSION .................................................................................................................. 14

## II.   INTRODUCTORY STATEMENT

Plaintiff Lavita L. Board ("Board") brings three (3) RESPA claims against Defendant Union Savings Bank ("USB"): (1) Violations of 12 C.F.R. § 1024.35(d) and 12 U.S.C. §§ 2605(e) and 2605(k) for the failure to timely acknowledge NOE #1/RFI #1, NOE #2, and NOE #3 (Count One); (2) Violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and 2605(k) for the failure to timely and properly respond to NOE #1/RFI #1, NOE #2, and NOE #3 (Count Two); and, (3) Violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. §§ 2605(e) and 2605(k) for the failure to timely and properly respond to RFI #2 and RFI #3 (Count Three). Board also brings one (1) TILA claim against USB for violations of 15 U.S.C. § 1639g and 12 C.F.R. § 1026.36(c)(3) for the failure to provide an accurate payoff statement (Count Four). In total, USB has violated RESPA at least eight (8) times and TILA at least once.

## III.   FACTUAL BACKGROUND

Board is the owner of real property and improvements located at and commonly known as 911 Purcell Ave., Cincinnati, OH 45205 (the "Home"). *See* USB's Proposed Undisputed Facts, Dkt. 15, PageID 267, ¶ 1. Defendant USB is the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") executed by Plaintiff (collectively, the "Loan"). Dkt. 15, PageID 267, ¶ 2.

On June 18, 2015, Board filed for bankruptcy protection (the "Bankruptcy"). Dkt. 15, PageID 268, ¶ 6. On March 23, 2020, the Bankruptcy trustee filed a Notice of Final Cure Payment which indicated that the Loan was current and due and owing for the payment due and owing for April 1, 2020. *See* Board's Disputed Issues of Material Facts ("DIMF"), attached as **Exhibit 1**, at ¶¶ 1-3. USB did not object to the notice of final cure in the Bankruptcy and Board received a discharge from the Bankruptcy on April 15, 2020. DIMF, ¶ 4.

1

Despite the notice of final cure and the Bankruptcy discharge, USB continued to send periodic billing statements to Board claiming that she was past due on the Loan in the amount of $1,293.46, an amount in excess of the amount necessary to constitute two (2) periodic payments on the Loan. DIMF, ¶ 5. On April 30, 2020, USB sent Board a Revised Annual Escrow Account Disclosure Statement wherein USB claimed that the escrow portion of her monthly payment has increased from $234.28 to $302.06. DIMF, ¶¶ 6-7.

Alarmed by the representations of USB, Board contacted her attorney on May 8, 2020. DIMF, ¶ 8. On or about May 19, 2020, Board, through counsel, sent a notice of error ("NOE #1/RFI #1") to USB at the address USB designated for the receipt of notices of error and requests for information, respectively (the "Designated Address"). DIMF, ¶¶ 9-11. Through NOE #1/RFI #1, Board alleged that USB committed multiple errors related to the Loan by:

 a. Failing to properly calculate the escrow balance for the Loan and increasing the monthly escrow payment from $234.28 to $302.06, an error pursuant to 12 C.F.R. §§ 1024.35(b)(4) and/or (11); and,
 b. Failing to properly apply accepted payments subsequent to and in accordance with a notice of final cure in the Bankruptcy, constituting errors pursuant to 12 C.F.R. §§ 1024.35(b)(2) and/or (11).

DIMF, ¶ 9. Through NOE #1/RFI #1, Board requested that USB provide a transaction history of the loan from July 1, 2015 through May 19, 2020 and a current payoff statement for the Loan. DIMF, ¶ 9. USB received NOE #1/RFI #1 at the Designated Address on May 23, 2020. DIMF, ¶¶ 10-11. On June 29, 2020, an employee of USB, Molly Smith ("Ms. Smith") sent an email to Board's attorneys in response to RFI #1 ("Response #1") stating "[p]lease see the attached payment history and payoff statements [sic] in response to your request" and containing a transaction history for the Loan and payoff statement for the Loan good through "6/30/2020". DIMF, ¶ 12. USB has failed to send any correspondence that addresses the errors asserted by NOE #1. DIMF, ¶ 13.

On or about June 8, 2020, Board, through counsel, sent two (2) separate requests for information via Certified Mail to USB at the Designated Address, RFI #2 and RFI #3. Dkt. 15, PageID 269, ¶¶ 12, 14. USB received RFI #2 and RFI #3 at the Designated Address on June 11, 2020. DIMF, ¶ 14. USB failed to respond to RFI #2 by June 25, 2020. DIMF, ¶ 15. On or about July 21, 2020, having not received a proper response to the request contained in RFI #2 seeking the identity and contact information for the owner or investor of the Loan, Board, through counsel, sent a second notice of error to USB at the Designated Address alleging that such failure was in error ("NOE #2"). DIMF, ¶ 16. USB received NOE #2 at the Designated Address on July 28, 2020. DIMF, ¶ 17. To date, Board has not received any correspondence from USB acknowledging or in response to NOE #2. DIMF, ¶ 18.

On August 4, 2020, Ms. Smith sent a secured message via email in response to RFI #2 and RFI #3 containing a portion of the requested documents ("Response #2"). *See* Dkt. 15, PageID 270, ¶ 22. Ms. Smith did not include any explanatory correspondence or cover letter along with Response #2. DIMF ¶ 19. Through Response #2, USB failed to provide information Board requested through RFI #3, specifically servicing notes for the Loan; broker's price opinions of the Home obtained in relation to the Loan; an accurate copy of the Note; and, information and documentation related to loss mitigation in relation to the Loan. DIMF ¶ 20.

On or about August 20, 2020, Board, through counsel, sent a third notice of error to USB at the Designated Address ("NOE #3"). DIMF, ¶¶ 21-22. Through NOE #3, Board alleged that USB committed multiple errors related to the Loan by failing to properly respond to RFI #3 and failing to respond to any of the errors as alleged through NOE #1. DIMF, ¶ 21. USB received NOE #3 at the Designated Address on September 1, 2020. DIMF, ¶ 22. Ms. Smith sent email correspondence to counsel for Board on September 10, 2020 acknowledging receipt of NOE #3

3

and requesting "what documentation is still outstanding" despite NOE #3 clearly indicating the same. *See* Dkt. 15, PageID 271, ¶ 23; DIMF, ¶ 23. On September 21, 2020, Board, through counsel, responded to Ms. Smith's September 21, 2020 email explaining to her what had been produced and noting that the other items noted in NOE #3 were still not produced. *See* Dkt. 15, PageID 271, ¶ 23. Ms. Smith sent email correspondence dated October 21, 2020 with attachments in response to NOE #3 ("Response #3"). DIMF, ¶¶ 24-26. USB, through Response #3, provided the documentation that Board indicated USB failed to previously provide in response to RFI #3 as alleged through NOE #3. DIMF, ¶ 25. USB, through Response #3, however, failed to provide any response to the errors alleged through NOE #1 as alleged again through NOE #3. DIMF, ¶ 26.

Without any response, and any supporting documentation, to the errors asserted by NOE #1 and NOE #3, Board cannot independently review such responses to ensure that all payments made both during her Chapter 13 Bankruptcy and since have been properly applied. DIMF, ¶ 27. As discussed in more detail below, USB's failures to comply with its RESPA obligations have directly resulted in Board incurring attorneys' fees and costs. DIMF, ¶ 28. USB's failure to properly investigate and respond to the errors asserted by NOE #1 and NOE #3 have caused her stress, anxiety, and anger. DIMF, ¶ 29.

### IV. LEGAL STANDARD

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and

inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

V. **ARGUMENT**

A. **USB'S VIOLATIONS OF RESPA AND TILA**

"As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Marais v. Chase Home Fin., LLC*, 736 F.3d 711, 721 (6th Cir. 2013) (citing *In re Carter*, 553 F.3d 979, 985-986, n.5 (6th Cir. 2009)). RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and more timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). "RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012).

Board completed the Bankruptcy and the Bankruptcy trustee filed a Notice of Final Cure Payment wherein she stated that Board had cured the default on the Loan and was current on her post-petition mortgage payments. DIMF, ¶¶ 1-4. USB failed to file any response to the Notice of Final Cure Payment. DIMF, ¶ 4. Nonetheless, USB began to attempt to collect alleged past due amounts and took $800.00 out of Board's escrow account to make two payments on the Loan. DIMF, ¶¶ 5-7.

As a result, Board, through counsel, sent NOE #1/RFI #1 to USB. DIMF, ¶¶ 11-13. USB never responded to the errors alleged through NOE #1, despite providing the documents requested by RFI #1. DIMF, ¶¶ 9-11. USB failed to timely provide Board with an accurate payoff statement. DIMF, ¶ 12. Board, through counsel, sent RFI #2 and RFI #3 to USB. Dkt. 15, PageID 269, ¶¶ 12, 14; DIMF, ¶ 14. USB failed to timely respond to RFI #2 and again failed to timely send an accurate

5

payoff statement. DIMF, ¶ 15. Since USB failed to timely respond to RFI #2, Board, through counsel, sent NOE #2 to USB. DIMF, ¶¶ 16-17. USB failed to send any correspondence that acknowledges or responds to the errors asserted by NOE #2. DIMF, ¶ 18. USB sent a partial response to RFI #3 that failed to provide important documents requested by RFI #3. DIMF, ¶¶ 19-20. Because USB failed to timely and properly respond to NOE #1, NOE #2, and RFI #3, Board, through counsel, sent NOE #3 to USB. DIMF, ¶¶ 21-22. In response, USB sent documents that it previously failed to provide to Board, confirming that it failed to properly respond to RFI #3. DIMF, ¶¶ 24-25. USB continues to ignore the errors asserted by NOE #1, NOE #2, and NOE #3. DIMF, ¶¶ 26-27.

**B.  USB'S VIOLATIONS OF RESPA AND TILA DIRECTLY AND PROXIMATELY CAUSED BOARD TO SUFFER ACTUAL DAMAGES**

**1.  Board Has Standing Pursuant to Article III.**

Article III of the Constitution limits the federal courts to adjudication of "Cases" and "Controversies". *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 8 (6th Cir. 2018); *Easley v. Reserves Network, Inc.*, No. 1:16 CV 544, 2017 U.S. Dist. LEXIS 81663, at *11 (N.D. Ohio Mar. 17, 2017). Standing requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury-in-fact requires the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Monetary and physical monetary harms readily qualify as tangible, concrete injuries under Article III. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568, 584 (2021). Board asserts that she suffered monetary harm by paying unnecessary charges and fees and

6

incurring attorneys' fees and costs associated with requesting information and correcting errors related to the servicing of her Loan. DIMF, ¶ 28 (Board's monetary harm is discussed in more detail below). Board asserts that she suffered harm in the form of emotional distress driven by USB's failure to properly investigate and respond to the errors asserted by NOE #1 and NOE #3, which has caused her stress, anxiety, and anger. DIMF, ¶ 29 (Board's emotional harm is discussed in more detail below).

A mortgage servicer's failure to provide a borrower with requested information or correct account errors imparts an injury in fact upon that borrower. *See Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 (PKC) (AKT), 2016 U.S. Dist. LEXIS 101201, at *19-21 n.6 (E.D.N.Y. Aug. 2, 2016) ("[The Court] rejects any argument by Defendant that, under *Spokeo*, Plaintiff lacks standing because he fails to allege any injury in fact. The gravamen of Plaintiff's entire case is that SPS's failure to provide him with accurate information regarding, *inter alia*, his mortgage and the amounts due thereon, including by failing to respond to his QWRs, directly resulted in his defaults under the mortgage and the Forbearance Agreements."); *Read v. Cenlar FSB*, No. EDCV 21-504 JGB (SPx), 2021 U.S. Dist. LEXIS 189791, at *15 (C.D. Cal. Sep. 30, 2021) ("Plaintiff incurred postage and attorney's fees because of Defendant's allegedly inadequate and untimely response… This is sufficient to allege a concrete injury."); *Richards v. NewRez LLC*, Civil Action No. ELH-20-1282, 2021 U.S. Dist. LEXIS 51233, at *51 (D. Md. Mar. 18, 2021) ("[P]laintiffs claim that defendant's untimely notices violated Shellpoint's duties under the FDCPA and RESPA. In other words, plaintiffs have alleged that they suffered injuries as a result of defendant's conduct.")

Board's harm is fairly traceable to the conduct of USB. First, USB has directly caused monetary harm to Board by assessing to the Loan improper fees and charges in the form of unnecessarily increased escrow costs. DIMF, ¶¶ 5-7. Second, Board incurred attorneys' fees and

7

costs as a direct and proximate result of USB failing to perform its RESPA duties. DIMF, ¶ 28. Third, USB's failure to correct the errors associated with the unnecessarily increased escrow costs directly caused Board's emotional distress. DIMF, ¶ 29.

USB does not argue that Board fails to meet the third element of Article III standing. Board's injuries can be redressed by an award of damages from this Court. As discussed, USB violations of RESPA directly and proximately caused financial and emotional harm to Board.

### 2. USB's Violations of RESPA Have Resulted in Financial Harm to Board.

To state a RESPA claim, a borrower must sufficiently allege either actual damages or statutory damages in the case of a pattern or practice of noncompliance. *Miller v. Caliber Home Loans, Inc.*, Civil Action No. 3:16-cv-621-DJH-DW, 2018 U.S. Dist. LEXIS 25504, at *6-7 (W.D. Ky. Feb. 15, 2018). Individual borrowers can recover from a mortgage servicer any actual damages as a result of the failure to comply with RESPA. 12 U.S.C. § 2605(f)(1). In the Sixth Circuit, actual damages may include expenses, costs, fees, and injuries caused by a servicer's failure to respond properly, "even if incurred before the failure to respond" because the "expenses became actual damages when [the servicer] ignored its statutory duties to adequately respond." *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 728 (S.D. Ohio 2014) (discussing *Marais*, *supra*, 736 F.3d at 721); *Lanton v. Ocwen Loan Servicing, LLC*, 793 F. App'x 398, 401 (6th Cir. 2019) ("[T]he cost of preparing a QWR that is inadequately responded to may sometimes constitute actual damages."); *Houston*, 505 F. App'x at 548 ("Houston also alleges financial and emotional damages arising from the violation."); *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018) ("But other courts have held, and the Sixth Circuit has suggested, that a plaintiff can establish actual RESPA damages when the plaintiff

8

incurred expenses submitting paperwork to a lender, but the lender 'ignored its statutory duties to adequately respond.'").

      **a.    USB Demanded and Board Paid Money to USB that Was Not Owed by Board.**

USB, as shown by the Revised Annual Escrow Account Disclosure Statement, improperly increased the amount it required Board to pay for escrow items. DIMF, ¶¶ 6-7. Despite NOE #1 and NOE #3 notifying USB of these errors, USB failed to address the issue. DIMF, ¶¶ 13, 26-27. Board's injury, paying additional money to USB despite being deemed current on the Loan, became actual damages when USB failed to adequately respond to NOE #1 and NOE #3. DIMF, ¶ 28. Board's damages are fairly traceable to USB's failure to adequately respond because had USB corrected the errors and actually responded to Board, USB would stop demanding and collecting the additional money, and refund the amounts not owed but previously paid by Board. This is not a "generalized, intangible" injury, Board is out a specific sum of money that she did not owe to USB because USB did not correct its errors.

      **b.    USB's Constant Disregard of its RESPA Obligations Directly and Proximately Resulted in Board Incurring Attorneys' Fees and Costs.**

"[A]ttorneys' fees incurred to remedy a RESPA violation 'are recoverable as actual damages under RESPA if they are not incurred in connection with bringing a suit under the statute.'" *Grembowiec v. Select Portfolio Servicing, Inc.*, Civil Action No. 18-16885, 2019 U.S. Dist. LEXIS 118031, at *16 (D.N.J. July 16, 2019); *McGahey v. Fannie Mae*, 266 F. Supp. 3d 421, 440-442 (D.Me. 2017) ("If McGahey is successful in the instant suit, he will not be able to recover the $100 paid to his attorney to send the [notice of error] because that cost was not incurred in bringing this action. Treating the $100 fee as actual damages therefore would not render the attorney's fees provision of RESPA superfluous."); *Read*, No. EDCV 21-504 JGB (SPx), 2021 U.S. Dist. LEXIS 189791, at *25 ("Attorney's fees constitute actual damages when they would

9

not render RESPA's attorney's fees provision superfluous."); *Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla. 2015) ("[A]lleged photocopying costs, postage costs, and reasonable attorney's fees incurred after an incomplete or insufficient response to a [RFI] are actionable under RESPA.").

As USB "failed to do that which it was obligated to do [under RESPA]" the attorneys' fees and costs associated with Board's submissions of RFI #2, RFI #3, NOE #1, NOE #2, and NOE #3 "metamorphosed into damages". "Thus, it was [USB]'s failure that caused the metamorphosis; thus, it was [USB] that caused the damages; hence, these damages, née costs, are "actual damages to the borrower as a result of [USB]'s failure...." *Marais*, 24 F.Supp.3d 712, 728 (citing 12 U.S.C. § 2605(f)(1)(A)); *Cameron v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-428, 2020 U.S. Dist. LEXIS 3468, at *8 (S.D. Ohio Jan. 9, 2020) ("Because Ocwen's response to the NOE was deficient, the costs and fees that Ms. Cameron incurred in writing and sending the NOE turned into damages after Ocwen's deficient response solidified the cause of action."); *Pope*, 2018 U.S. Dist. LEXIS 98413, at *10; *McMillen v. Resurgent Capital Servs., L.P.*, No. 2:13-CV-00738, 2014 U.S. Dist. LEXIS 92345, at *7 (S.D. Ohio July 8, 2014); *Justice v. Ocwen Loan Servicing*, No. 2:13-CV-165, 2015 U.S. Dist. LEXIS 5665, at *52-53 (S.D. Ohio Jan. 16, 2015).

Further: (1) USB's failure to timely and properly respond to RFI #2 forced Board to incur attorneys' fees and costs for the preparation of NOE #2; (2) USB's failure to timely and properly respond to RFI #3 forced Board to incur attorneys' fees and costs for the preparation of NOE #3; and, (3) USB's failure to timely and properly respond to NOE #1 forced Board to incur attorneys' fees and costs for the preparation of NOE #3. DIMF, ¶ 28.

USB claims that its violations are bare procedural violations of RESPA. As noted, *supra*, Congress noted that "significant reforms in the real estate settlement process [were] needed to

insure that consumers throughout the Nation are provided with greater and more timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). USB's failures to timely and fully respond to RFI #2 and RFI #3 are exactly the type of conduct Congress sought to curtail. USB's failure to even address, let alone respond to, the errors asserted by NOE #1, NOE #2, and NOE #3 represent the abusive practices Congress wished to stop.

As to the attorneys' fees and costs associated with filing and maintaining the instant matter, Board plans to seek reasonable attorneys' fees and costs after she successfully proves that USB failed to comply with its RESPA obligations. 12 U.S.C. § 2605(f)(3) ("In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances."). These are distinct from attorneys' fees and costs incurred in connection with requesting information and notifying mortgage services of account errors, which qualify as actual damages pursuant to 12 U.S.C. § 2605(f)(1). *Grembowiec*, 2019 U.S. Dist. LEXIS 118031, at *16.

In *Ward v. Nat'l Patient Account Servs. Sols.*, No. 20-5902, 2021 U.S. App. LEXIS 24369 (6th Cir. Aug. 16, 2021), the Sixth Circuit held that hiring counsel to "affirmatively pursue a claim" is not a concrete harm. *Id.* at *11. Board did not hire her attorneys to affirmatively pursue the instant matter in federal court, but instead to request information and most importantly correct the errors with USB's application of her monthly payments. In *Duncan v. Liberty Mut. Ins. Co.*, 854 F. App'x 652 (6th Cir. 2021), the plaintiff suffered no damages and only incurred the expenses of bringing the lawsuit. The instant matter is distinguishable, as Board incurred attorneys' fees and

11

costs related to her rights under RESPA, which again, are separate from the attorneys' fees and costs associated with filing a RESPA lawsuit.

### 3. USB's Violations of RESPA Have Resulted in Emotional Harm to Board.

Actual damages are defined broadly and include damages for emotional distress. *See Houston v. United States Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543, 548 n.6 (6th Cir. 2012); *Cameron v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-428, 2020 U.S. Dist. LEXIS 3468, at *8 (S.D. Ohio Jan. 9, 2020); *Schoen v. Bank of Am., N.A.*, No. 2:17-cv-648, 2019 U.S. Dist. LEXIS 23460, at *16 (S.D. Ohio Feb. 13, 2019); *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 n. 52 (N.D. Ohio June 12, 2018); *Miller v. Caliber Home Loans, Inc.*, Civil Action No. 3:16-cv-621-DJH-DW, 2018 U.S. Dist. LEXIS 25504, at *7-8 (W.D. Ky. Feb. 15, 2018).

Board must show that her emotional distress is linked to USB's failure to comply with RESPA. *Schoen*, 2019 U.S. Dist. LEXIS 23460, at *16. In *Cameron v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-428, 2020 U.S. Dist. LEXIS 14595 (S.D. Ohio Jan. 29, 2020), the Court read the plaintiff's deposition testimony and affidavit to determine that she presented sufficient evidence that allowed her to proceed on her claim that she suffered emotional damages as a result of a violation of RESPA. Id. at *5.

In her deposition, Board states that the servicing errors that she brought to the attention of her attorneys resulted in embarrassment and humiliation[1]. Board Depo., Dkt. 13, PageID 167-168, 69:18-71:9. Despite Board making it through the Bankruptcy and receiving a discharge she stated:

> So I felt like, okay, now I can go forward and do the right thing, but I'm still in it because of this situation with Union Savings. So I guess I'd say it's affected me in

---

[1] Board dismisses any claims for emotional distress damages related to her request for information claims, but seeks the opportunity to present evidence of emotional distress damages that she incurred as a result of USB's failure to correct the servicing errors she asserted.

12

a way that I'm still under this stress, because I feel like they waited for my bankruptcy to be discharged and then hit me with what they felt like they wanted instead of just giving it to the trustee and letting the trustee work it out.

Id. at 70:6-14. Referencing USB's demand of additional money for escrow items, Board further stated that she cannot "afford for [her] money to just be taken from [her]." Id. at 70:24-25. Board feels "like [she] did what [she] was supposed to do", but USB "came and just took [her] money." Id. at 70:25-71:3. Board is still currently experiencing emotional distress related to USB taking her money, because USB will not explain to her what is going on. Id. at 71:6-9. Board's anger and frustration affects her work, as she still "fumes" and cries about USB's actions, which affects her focus. Id. at 72:6-14. Board's emotional distress is "still not ending and [she] want[s] it to end." Id. at 72:14-15.

Despite USB's insistence that Board's emotional distress stems from the Bankruptcy, the above testimony shows that USB's actions in taking additional funds from her and failures to explain to her what is going on is a significant cause of Board's emotional distress. Board should be permitted the opportunity to present to a jury evidence of her emotional damages.

    **4.    Board Is Entitled to Statutory Damages for USB's Pattern or Practice of Noncompliance With RESPA**

The Sixth Circuit notes that a failure to respond properly pursuant to RESPA's obligations can be evidence of "continued prejudicial practices". *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015). Board is entitled to $2,000.00 for each of violation of RESPA by USB. 12 U.S.C. § 2605(f)(1)(B) provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for **each such failure** ... any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."

(emphasis added); *see Moore v. Caliber Home Loans, Inc.*, No. 1:14-cv-852, 2015 U.S. Dist. LEXIS 117737, at *22-23 (S.D. Ohio Sep. 3, 2015) ("[A] company's failure to comply with three provisions of the statute can render them liable for separate damages for each such failure"). USB has violated RESPA at least eight (8) times, and Board seeks $16,000.00 from USB in statutory damages.

As discussed, *supra*, USB engaged in a pattern or practice of disregard for its duties pursuant to RESPA by failing to timely and properly acknowledge Board's requests for information and notices of error, failing to provide any responses to Board's notices of error, and failing to timely and properly provide Board with the information she requested through requests for information. USB's failures show that it engaged in "continued prejudicial practices" towards Board and that noncompliance with 12 C.F.R. § 1024.35, 12 C.F.R. § 1024.36, and 12 U.S.C. § 2605(k) was USB's "standard operating procedure". *Martini*, 634 F. App'x at 164; *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

## VI. CONCLUSION

For the reasons set for above, Plaintiff Lavita L. Board respectfully requests that this Court deny Defendant Union Savings Bank's Motion for Summary Judgment and for such other relief this Court deems just and proper.

Respectfully submitted,

/s/ *Marc E. Dann*
**DANN LAW**
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536

14

notices@dannlaw.com
*Counsel for Plaintiff Lavita L. Board*

**Dated**: October 19, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
*Counsel for Plaintiff Lavita L. Board*